INFORMATICS GENERAL
CORPORATION, Plaintiff,

v.

Caspar W. WEINBERGER, Defendant.

Civ. A. No. 85–0993.

United States District Court,
District of Columbia.

June 28, 1985.

Alan I. Saltman, Saltman & Stevens, Washington, D.C., for plaintiff.

John D. Bates, Asst. U.S. Atty., Linda Ruiz, Sp. Asst. U.S. Atty., Washington, D.C., for Federal defendant; Harry Dorsey, Cpt. JAGC, U.S. Army Litigation, of counsel.

Robert E. Hebda, Steele, Simmons & Fornaciari, Washington, D.C., James D. Duffey, Jr., Deputy Gen. Counsel, Electronic Data Systems Federal Corp., Bethesda, Md., for defendant-intervenor Electronic Data Systems Federal Corp.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

In this action plaintiff Informatics General Corporation (Informatics) challenges an award by the Department of Defense (DOD) of the Systems Engineering and Technical Assistance Contract (SETAC) to Electronic Data Systems, Inc. (EDS). The successful, top-ranked EDS proposal was technically superior to those submitted by other competitors, including plaintiff. However, plaintiff, the second-ranked bidder, challenges the award of the SETAC contract to EDS on the ground that EDS

should have been disqualified because it was involved in a conflict of interest in contravention of government procurement regulations. Pending before the Court are plaintiff's motion for a preliminary injunction and the government's motion for summary judgment supported by intervenor EDS.

I

The material facts are not in dispute. The five-year, $11 million SETAC contract involves the provision of systems engineering and other technical assistance to DOD's TRIMIS program, an ongoing effort to computerize and integrate DOD's medical care facilities. Among other duties, the SETAC contractor is to provide DOD with technical assistance in developing a Request for Proposals (RFP) for bids on the $750 million Composite Health Care System (CHCS), which will automate DOD's 166-facility military hospital network, and it is also to provide assistance in evaluating CHCS bids for technical adequacy.[1] DOD solicited bids for the SETAC contract last fall, and it awarded the SETAC contract to EDS on March 1, 1985. The CHCS RFP, which EDS reviewed under its SETAC contract, was issued on May 15, 1985, and CHCS bids are due in August, 1985.

Plaintiff contends that the award of the SETAC contract to EDS violates various conflict of interest provisions of the Federal Acquisitions Regulations (FAR), 48 C.F.R. § 9.500 *et seq.* In particular, plaintiff argues that the award of the SETAC contract to EDS violates FAR section 9.505–3, which directs that contracts generally shall not be awarded to contractors that will be responsible for evaluating their own or their competitors' products, unless proper safeguards are included to ensure objectivity and to protect the government's interest in obtaining fair and impartial evaluations.[2] Plaintiff also relies on other regulations in FAR section 9.5, such as section 9.504(a)(2), which requires the contracting officer to "avoid, neutralize, or mitigate significant potential conflicts before contract award." 48 C.F.R. § 9.504(A)(2). Plaintiff contends that, as a major provider of hospital automation systems, EDS has significant potential conflicts of interest, and that DOD's efforts to resolve those conflicts have been belated and inadequate.

The first conflict of interest identified by plaintiff involves EDS' participation in ongoing Veterans' Administration (VA) hospital automation demonstration projects. The VA is using the demonstration projects to evaluate the merits of two competing automation systems, known as MUMPS and non-MUMPS, one of which it will adopt for the automation of its entire hospital system. Congress, recognizing the potential economies in having the VA and DOD use similar automation systems, has directed DOD and VA to develop compatible hospital automation systems. In particular, Congress has directed DOD to design the CHCS RFP and competition to select the outstanding MUMPS and non-MUMPS proposals and to conduct a "fly-off" between the MUMPS and non-MUMPS systems to select the CHCS contractor.[3] Plaintiff argues that EDS, a supplier of non-MUMPS systems, will have a strong incentive to establish CHCS technical standards that discriminate against MUMPS systems, thereby ensuring that a non-MUMPS system will win the DOD CHCS contract and that the VA will therefore

---

1. The SETAC contract requires the contractor to provide requested technical assistance in six "Task Areas," including: (1) technical evaluation of CHCS proposals; (2) CHCS quality control evaluations; (3) equipment testing and certification; (4) configuration management; (5) system deployment planning and site implementation; and (6) technical studies and analyses.

2. The regulation provides that: "Contracts involving (a) technical evaluations of other contractors' offers or products or (b) consulting services ... shall not generally be awarded to a contractor that would evaluate, or advise the Government concerning, its own products or activities, or those of a competitor, without proper safeguards to ensure objectivity and protect the Government's interests...." 48 C.F.R. § 9.505–3.

3. See Report of the Conference Committee on Appropriations, H.R.Rep. No. 1159, 98th Cong., 2d Sess. 316 (Oct. 10, 1984).

have an additional incentive to award its $300 million hospital automation contract to a non-MUMPS contractor such as EDS.

A second conflict of interest identified by plaintiffs involves EDS' status as the incumbent contractor for the DOD Defense Enrollment Eligibility Reporting System (DEERS). The DEERS contract is scheduled to be recompeted this summer, and the draft CHCS RFP requires CHCS bidders to explain how their systems will function compatibly with the DEERS system. Plaintiff alleges that EDS' interest in maintaining its DEERS contract may lead it improperly to take advantage of its access to proposed CHCS proposals. Indeed, plaintiff alleges generally that plaintiff's access to technical information concerning competitors' products creates a significant conflict of interest that will deter competition for the CHCS contract.

## II

■■■ As the foregoing summary and common sense suggest, it is indisputable that the letting of the SETAC contract to a hospital automation systems vendor raised potential conflict of interest problems.[4] That, however, is only the beginning of the analysis required under the FAR. The critical question is whether DOD identified those potential conflicts and took adequate measures to eliminate or minimize them prior to negotiating the SETAC contract.[5] In considering the adequacy of DOD's negotiation of the contract the Court must, of course, undertake its analysis cognizant of the great discretion accorded to procurement officials and the plaintiff's heavy burden of demonstrating that the challenged action (1) lacked a rational basis or (2) clearly and prejudicially violated applicable statutes and regulations.[6] After considering carefully the submissions of the parties, the Court concludes that plaintiff has failed to carry its burden.

■■■ The original SETAC solicitation, promulgated last fall, explicitly included provisions designed to eliminate or minimize conflicts of interest that might arise if the SETAC contract were awarded to a contractor that was also a hospital automation systems provider. Clause H–5 of the SETAC solicitation barred the successful SETAC contractor from competing for, or serving as a subcontractor on, CHCS contracts for three years.[7] Clause H–12 specifically prohibited the SETAC contractor from misusing proprietary information to which access was gained in performance of the SETAC contract.[8] The inclusion of these clauses clearly gave notice to SETAC bidders, including plaintiff, that DOD anticipated the possibility that the SETAC contract might be awarded to a hospital automation systems provider. Yet none of the SETAC bidders, including plaintiff, complained that the draft SETAC contract inadequately mitigated potential conflicts of interest.

In addition to including specific pre-award conflict limitation provisions in the SETAC contract, DOD has also exercised its contractual right to modify the terms of the contract to avoid potential conflicts identified after the contract was awarded. Specifically, DOD has taken advantage of a

---

4. Indeed, the FAR regulations recognize that "organizational conflicts of interest are more likely to arise in contracts involving—(1) Management support services; (2) Consultant or other professional services; (3) Contractor performance of or assistance in technical evaluations; or (4) Systems engineering and technical direction work performed by a contractor that does not have overall contractual responsibility for development or production." 48 C.F.R. § 9.502(b).

5. Numerous FAR regulations require procurement personnel to identify and attempt to mitigate potential conflicts of interest before awarding contracts. See, e.g., 48 C.F.R. §§ 9.504(a)(2), (c); 9.507.

6. See *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 203–04 (D.C.Cir.1984); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir. 1971).

7. This contract provision is consistent with the provisions of 48 C.F.R. §§ 9–505.1; 9.505–2(a)(2); and 9.508(1) and (2).

8. This contract restriction was consistent with the provisions of 48 C.F.R. § 9.505–4(a).

contract provision permitting it to consult the SETAC contractor on a "task oriented" basis to exclude EDS from the process of evaluating the technical adequacy of the CHCS proposals submitted by various bidders. In this way DOD has obviated any potential conflict—and any potential chilling of CHCS competition—that might arise from EDS having access to potential competitors' proprietary information.[9] To be sure, this modification of the SETAC contract took place after the contract was awarded to EDS. But DOD included the modification provision in the contract prior to the award, thereby providing needed flexibility in resolving potential conflicts as they might arise. It cannot seriously be argued that such an approach is inconsistent with the FAR conflict mitigation provisions, which require only that contracts include provisions designed to obviate or mitigate potential conflicts, not that agency contract officers be clairvoyant.

■ It is also clear that any remaining unresolved potential conflicts of interest are insubstantial or speculative. Both the VA and DEERS conflict allegations assume that EDS will have controlling authority both in drafting the CHCS RFP and in ultimately awarding the CHCS contract. However, both the SETAC contract and the affidavits submitted by DOD TRIMIS employees clearly indicate that the SETAC contractor is to serve as a consultant only, and that ultimate decisions are to be made by DOD personnel. Beyond that, the VA and DEERS compatibility requirements do not mandate the use in CHCS of systems identical to those presently used for those systems; they require only that the CHCS system ultimately adopted be compatible with those systems, and vice versa. Thus, plaintiff's intimations to the contrary notwithstanding, the CHCS award will by no means dictate the outcome of the VA and DEERS competitions, and these alleged conflicts must be considered speculative at best. Such speculative conflicts of interest do not amount to violations of the FAR, which requires only that agencies avoid or mitigate *"significant* potential conflicts," 48 C.F.R. § 9.504(a)(2) (emphasis added), not that all conceivable conflicts be avoided.

■ The speculative character of the conflicts identified by plaintiff suggests the fatal underlying defect in its argument. In identifying conflicts implicitly created by EDS' provision of other computer systems under other contracts to DOD or to other agencies (such as the VA), plaintiff is implicitly arguing that vendors can never serve as contract consultants to government agencies, even where they are prohibited from competing for the contract on which they consult and subjected to other appropriate restrictions. The attraction of such an argument for plaintiff, a consulting firm that is not a vendor of computer systems, is obvious: the rule eliminates much of the potential competition. It is equally obvious that the cost of such a rule to the government, and to the public, in terms of the decrease in competition and, in this case, the loss of superior technical expertise, would be substantial. Nothing in the FAR, which permits potential conflicts to be mitigated where they cannot be eliminated,[10] and which directs procurement officers to avoid the adoption of cumbersome information and documentation requirements in evaluating and resolving conflicts,[11] mandates the adoption of a principle that would achieve such perverse results.[12]

### III

The Court of Appeals has repeatedly indicated that principles of judicial restraint

---

9. DOD has arranged for another contractor to perform Task 1 of the SETAC contract with respect to CHCS; however, EDS will perform Task 1 with respect to other aspects of the TRIMIS program.

10. See 48 C.F.R. §§ 9.504(a)(2) ("avoid, neutralize, *or mitigate* significant potential conflicts") (emphasis added); 9.507(a) (same).

11. See 48 C.F.R. § 9.504(d).

12. To the contrary, it appears that the FAR explicitly contemplates the possibility that vendors will provide technical and developmental assistance to the government. See 48 C.F.R. § 9.505–2(a)(3), (b).

are particularly important in government contract cases, which typically involve complicated decisions best left to the expertise of the contracting agency.[13] Plaintiff has failed to establish that the SETAC contracting procedure violated the FAR or any other applicable federal law.[14] There is therefore no basis whatever for overturning the contract award; nor, obviously, given the lack of merit in plaintiff's case, is there any warrant for the issuance of an injunction suspending performance of the SETAC contract.

Accordingly, it is this 28th day of June, 1985

ORDERED that plaintiff's motion for a preliminary injunction be and it is hereby denied; and it is further

ORDERED that defendant's motion for summary judgment be and it is hereby granted; and it is further

ORDERED that this action be and it is hereby dismissed with prejudice.

---

**13.** See *Delta Data Systems, supra,* note 6.

**14.** The complaint also alleges that the SETAC contract award violates 38 U.S.C. § 5011, which provides for the sharing of health care facilities by DOD and the VA, and the directions of the Conference Committee on Appropriations cited in note 3, *supra.* No provision of the cited statute prohibits, or even directly relates to, the challenged contract award. Nor can plaintiff state a claim under the Conference Committee Report, which does not have the force of law and which in any event in no way prohibits this contract award.